# IN THE SUPREME COURT OF THE STATE OF NEVADA

RICHARD CANAPE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62843

**FILED**

MAY 19 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## *ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING*

This is an appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

In 1988, appellant Richard Canape robbed and killed Manuel Toledo. After a jury trial, he was convicted of first-degree murder with use of a deadly weapon and robbery with use of a deadly weapon. The State sought the death penalty and alleged four aggravating circumstances: (1) Canape had previously been convicted of a crime involving violence, (2) he committed the murder to avoid arrest, (3) he committed the murder during the course of a robbery, and (4) the murder showed depravity of mind. The jury found all four aggravating circumstances and that there were no mitigating circumstances sufficient to outweigh them and imposed a death sentence. This court affirmed the judgment and sentence on appeal. *Canape v. State*, 109 Nev. 864, 883, 859 P.2d 1023, 1035 (1993). Canape then filed a postconviction petition for a writ of habeas corpus. While the petition was pending, Canape underwent several psychological evaluations. The district court conducted evidentiary hearings, where the experts who conducted the evaluations and trial

16-15837

counsel testified. The district court denied the petition. This appeal followed.

Canape contends that the district court erred by denying his petition, which included claims of ineffective assistance of counsel.[1] To prove ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting *Strickland*); *Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996) (applying *Strickland* to appellate counsel). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

---

[1]Several of Canape's claims are either inappropriately presented to this court in the first instance, *see Davis v. State*, 107 Nev. 600, 606, 817 P.2d 1169, 1173 (1991), *overruled on other grounds by Means v. State*, 120 Nev. 1001, 103 P.3d 25 (2004), were abandoned below, or are procedurally barred because they could have been raised on direct appeal, *see* NRS 34.810(1)(b). For these reasons, we decline to consider Canape's claims that (1) the prosecutor violated *Batson v. Kentucky*, 476 U.S. 79 (1986), (2) the trial court erred by denying counsel's motion to withdraw, (3) the trial court erred by failing to instruct the jury regarding "other matter" evidence, (4) counsel was ineffective for failing to ensure that the jury was instructed to find that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt, (5) the "previously convicted of a crime of violence" aggravator is invalid, and (6) he is incompetent to be executed because he is "mentally retarded."

SUPREME COURT
OF
NEVADA

(O) 1947A

2

*Guilt phase*

First, Canape contends that the district court erred by denying his claim that counsel was ineffective for conceding his guilt at trial. We disagree because counsel did not concede Canape's guilt; he conceded that *someone* murdered and robbed Toledo but argued that Canape was not that person. Counsel's argument was reasonable given the evidence. Therefore, we conclude that the district court did not err by denying this claim.

Second, Canape contends that the district court erred by denying his claim that counsel was ineffective for failing to object to prosecutorial misconduct at trial and failing to challenge misconduct on appeal.[2] We disagree. Counsel testified at the evidentiary hearing that he made a strategic decision not to object to the prosecutor's statements at trial and the district court determined that counsel was credible. Counsel testified that he raised other instances of misconduct on appeal because he did not feel that the alleged misconduct pointed out by Canape was worth challenging. These decisions were reasonable under the circumstances. *See Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989) (explaining that appellate counsel will be most effective when every conceivable issue is not raised on appeal). Moreover, Canape fails to demonstrate prejudice. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008).

---

[2]Canape asserts that this court should consider the misconduct he challenges in his opening brief alongside "remarks objected to in [his] original petition for a writ of habeas corpus." We decline to consider any misconduct other than that specifically raised in his opening brief.

Therefore, we conclude that the district court did not err by denying this claim.[3]

Third, Canape contends that counsel was ineffective for failing to investigate and present evidence challenging the hair and twine evidence presented by the State through expert testimony. We disagree. Counsel testified that he did not believe a defense expert in these areas was warranted because the State's expert was only able to say that Canape's hair and the twine found in his car were consistent with evidence found at the scene. Canape has presented no evidence which suggests that the hair and twine were dissimilar and has not demonstrated that counsel's assessment of the evidence was unreasonable. Therefore, we conclude that the district court did not err by denying this claim.

Fourth, Canape contends that the district court erred by denying his claim that counsel was ineffective for failing to object to the first-degree murder instruction given at trial, commonly known as the *Kazalyn* instruction.[4] We disagree because the *Kazalyn* instruction was appropriately given at the time of Canape's trial. *See Nika v. State*, 124

---

[3]The transcripts from the penalty phase are incomplete. Because of this, Canape contends that he is not adequately able to address the prosecutor's misconduct. On direct appeal, this court considered whether the lack of transcripts deprived Canape of due process or otherwise prejudiced him. Because the parties complied with NRAP 10(c), this court held that no relief was warranted. *See Canape*, 109 Nev. at 871, 859 P.2d at 1027. This holding constitutes the law of the case. *See Hsu v. Cnty. of Clark*, 123 Nev. 625, 629-30, 173 P.3d 724, 728 (2007).

[4]*Kazalyn v. State*, 108 Nev. 67, 825 P.2d 578 (1992).

Nev. 1272, 1289, 198 P.3d 839, 851 (2008).[5] Therefore, we conclude that the district court did not err by denying this claim.

*Penalty phase*

Canape contends that the district court erred by denying his claim that counsel was ineffective regarding the penalty phase of his trial. Because we conclude that counsel was ineffective, we remand this matter for the district court to grant the petition in part and order a new penalty hearing.[6]

Counsel's performance during the penalty phase of Canape's trial was concerning. Counsel presented no evidence on Canape's behalf and did not identify a single mitigating circumstance. Counsel began his argument by apologizing for being absent when the guilty verdicts were announced, explained that he was not fully prepared to argue, then reminded jurors that they did not *have* to execute Canape—but they could

---

[5]The Ninth Circuit recently discussed this court's *Kazalyn* jurisprudence in *Riley v. McDaniel*, 786 F.3d 719, 724 (9th Cir. 2015). While we do not agree with *Riley, see Nika,* 124 Nev. at 1280-87, 198 P.3d at 845-48 (discussing the history of Nevada law on the phrase "willful, deliberate, and premeditated," including *Hern v. State*, 97 Nev. 529, 635 P.2d 280 (1981), and explaining that prior to *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000), this court had not required separate definitions of the terms and had instead viewed them as together conveying a meaning that was sufficiently described by the definition of "premeditation" eventually approved in *Kazalyn* and *Powell v. State*, 108 Nev. 700, 838 P.2d 921 (1992)), we note that, given the verdict and the aggravating circumstances found, the jury would have necessarily concluded that the murder was willful, deliberate, and premeditated, or was committed in the course of a felony.

[6]We need not address Canape's other claims regarding the penalty hearing.

 

if they wanted to. When counsel was questioned about his performance at the evidentiary hearing, he explained that, at the time of Canape's trial, he was chief of the capital team at the Clark County Public Defender's Office and was "overwhelmed" with capital cases. Because counsel was the only attorney on the case and had no investigator, he had to investigate by himself while simultaneously investigating and trying his other cases. According to counsel, his entire mitigation investigation consisted of making phone calls to "a couple of people in Hawaii" who did not answer, as well as at least one person "back east" who did answer but was not helpful. Counsel also thought he "might have" sent some letters. Counsel explained that his investigation was limited to these actions because he relied on Canape to provide him with leads and Canape was unwilling or unable to provide more helpful information given his unstable background and lack of normal social contacts. The district court concluded that counsel's performance was reasonable given Canape's inability or unwillingness to aid in his own defense.

We conclude that counsel's performance in preparing for and throughout the penalty phase was deficient. *See Doe v. Ayers*, 782 F.3d 425, 435 (9th Cir. 2015) ("Death is different. So too are the lengths to which defense counsel must go in investigating a capital case." (internal alterations and citations omitted)). At the time of Canape's trial, it was "unquestioned" that "counsel had an 'obligation to conduct a *thorough* investigation of the defendant's background.'" *Porter v. McCollum*, 558 U.S. 30, 39 (2009) (referencing professional norms in 1988) (quoting *Williams v. Taylor*, 529 U.S. 362, 396 (2000) (emphasis added)); *Bobby v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

6

*Van Hook*, 558 U.S. 4, 7 (2009) (acknowledging professional norms in 1980).[7] Counsel's explanation that this meager investigation was the best he could do given Canape's reticence falls flat. We recognize that Canape was a "poor historian." And it is true that "[c]ounsel's actions are usually based, quite properly, on . . . information supplied by the defendant." *Strickland*, 466 U.S. at 691. But the mere fact that a client is "fatalistic or uncooperative does not obviate the need for defense counsel to conduct *some* sort of mitigation investigation," *Porter*, 558 U.S. at 40. Canape's failure, for whatever reason, to provide counsel with more helpful information did not relieve counsel of his responsibility to conduct a thorough investigation, *see Ayers*, 782 F.3d at 435 ("[A] lawyer has not fulfilled his duties to his client if he ceases investigating because his client has not been forthcoming about his background."); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (holding that counsel failed to conduct an effective mitigation investigation even though the defendant was "uninterested" in helping and "was even actively obstructive by sending counsel off on false leads"), it simply meant that counsel had to utilize other sources, *see Porter*, 558 U.S. at 40; *Johnson v. Bagley*, 544 F.3d 592, 603 (6th Cir.

---

[7]Counsel's failure to utilize an investigator under the circumstances was inconsistent with prevailing professional norms around the time of his performance. *See, e.g.*, National Legal Aid and Defender Association: Standards for the Performance of Counsel in Death Penalty Cases, adopted December 1, 1987; American Bar Association: Guidelines for the Appointment and Performance of Counsel in Death Penalty cases, adopted 1989 ("An attorney leading a mitigation investigation should conduct interviews in the presence of a third person who will be available, if necessary, to testify as a defense witness at trial. Alternatively, counsel should have an investigator or mitigation specialist conduct the interviews.").

2008) ("Uncooperative defendants . . . do not shield a mitigation investigation . . . if the attorneys unreasonably failed to utilize other available sources."). And the record demonstrates that counsel was aware of and had access to other sources of information about Canape which he failed to adequately develop. *See Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (holding that counsel's investigation was unreasonable when he failed to follow up on potential mitigation information in his possession).[8] The little information about Canape that counsel admittedly possessed— that he came from a disruptive background, dropped out of school and left his family at an early age, and lacked meaningful social contacts—went unmentioned at the penalty phase, and counsel did not clearly articulate any reasons why Canape was not worthy of death.[9] We conclude that counsel's performance fell below an objective standard of reasonableness.

We also conclude that counsel's deficient performance prejudiced Canape. *See Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *Silva v. Woodford*, 279 F.3d 825, 847 (9th Cir. 2002) (explaining that "we must be especially cautious in protecting a

---

[8]For example, counsel testified that he possessed some of Canape's prior records and presentence investigation reports which contained more information than he had learned from "months" of talking to Canape.

[9]Given counsel's failure to adequately investigate, his decisions regarding which strategy to pursue during the penalty phase are not entitled to deference. *See Ayers*, 782 F.3d at 444 ("[D]efense counsel failed to make a reasonable investigation into potential mitigating evidence. Therefore, his decision not to put on a mitigation case cannot be considered to be the product of a strategic choice.").

defendant's right to effective counsel at a capital sentencing hearing"). "Because a sentencing jury is given broad latitude to consider amorphous human factors, in effect, to weigh the worth of one's life against his culpability, . . . the presentation of relevant mitigation evidence is of *vital* importance to the jury's penalty determination." *Frierson v. Woodford*, 463 F.3d 982, 993 (9th Cir. 2006) (emphasis added and internal quotation marks omitted); *see also Mayes v. Gibson*, 210 F.3d 1284, 1288 (10th Cir. 2000) (explaining that the presentation of mitigation evidence plays an "overwhelming" role in the just imposition of the death penalty, as it "affords an opportunity to humanize and explain—to individualize a defendant outside the constraints of the normal rules of evidence"). Here, the jury heard a great deal about the crime and the reasons why Canape was worthy of death, but nothing about his troubled past or any other evidence which might have humanized or individualized him. As a result, the jury was given nothing to meaningfully aid it in its task of accurately evaluating Canape's death worthiness. Importantly, the State's case in aggravation was not strong,[10] and the murder, while reprehensible, does not qualify as "the worst of the worst." *See Burnside v. State*, 131 Nev., Adv. Op. 40, 352 P.3d 627, 653 (2015) (Cherry, J., dissenting). Counsel's failure to develop and present a mitigation case coupled with his unfocused argument that, in our view, only reinforced the State's

_____

[10]The State concedes that the "committed during the course of a robbery" and depravity-of-mind aggravating circumstances are no longer valid. Because we conclude that Canape is entitled to a new penalty hearing on other grounds, we need not address whether he is entitled to a new penalty hearing pursuant to *McConnell v. State*, 120 Nev. 1043, 102 P.3d 606 (2004).

argument that Canape was worthy of death, renders the result of the penalty hearing fundamentally unreliable. *See Riley v. State*, 110 Nev. 638, 648, 878 P.2d 272, 279 (1994) ("Prejudice in an ineffective assistance of counsel claim is shown when the reliability of the jury's verdict is in doubt."); *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (recognizing that a reviewing court must consider "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). Therefore, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

cc:  Hon. Elissa F. Cadish, District Judge
     Christopher R. Oram
     Attorney General/Carson City
     Clark County District Attorney
     Eighth District Court Clerk

